First case for argument is Fedorov v. Bondi. Counsel, whenever you're ready. Good morning, Your Honors. May I please the court? Marina Alexandrovich for the petitioners. Would you like to save any time for rebuttal? Yes, please, Your Honor. How much? Your Honor, two minutes. Okay. You may proceed when ready. Yes, Your Honor. There are three questions presented by this honorable panel. To answer this first question, the answer is yes. And specifically, a respondent petitioner is going to refer this court to AR-57, where the judge expressly acknowledged so in his order in these very words. The respondent's biggest fear is being conscripted. Then he continued citing one of the nine circuit cases, which would be the Khatia v. Gonzalez. And then he expressly mentions the punishment for violation of military service rules can constitute persecution when one is subject to disproportionately severe punishment or the respondent is likely to face persecution if he returns. In other words, inhuman conduct. So in other words, the immigration judge expressly addresses the issue. He does connect the conscription and inhuman conduct. That seems to maybe be an answer to our second question about whether it was considered by the agency. But you're not arguing today that this was, I mean, where in the petitioner's materials would this have been presented to the immigration judge? Can you point us to anything in the declaration, in the hearing, in other words, before the immigration judge adopted as you contend the argument? Yes, Your Honor. I have some citations. I think they're relevant. Well, AR-91, line 17 from 19, respondent's testimony, because of my Christian, because I'm Christian, evangelized Christian, based on my religious views, I cannot, I can't take the weapons into my arms and follow all the army orders. I ask for the alternate alternative service. Then you want to respond and keep talking, same AR-97, line 7 through 10. I'm afraid to go back into the country that is persecuting me for my religious views and political views. And that would like take me to war because I oppose the political and because I'm opposed to that and because I consider Ukraine as my braveries and this whole war is simply craziness. Well, I mean, but against the backdrop that forced conscription is not itself a ground for asylum, you need more. And I think on one telling, you need to establish that it's, that his objection is because of a fear of being forced to engage in inhuman conduct. I think at one point the immigration judge asks about that. I think he says that maybe that it's, he thinks that it's criminal, but then it keeps coming back to religious objections. And I mean, you'd concede that religious objections to forced conscription without more is not enough. Well, you want to, I understand your question. And if I may kind of jump to answering question number two, because I think it's partial addresses your concern. Petitioner argues that the BIA actually did not consider expressly inhuman conduct. BIA only considered excessive punishment, but BIA did not address specifically inhuman conduct. However, the judge in his decision, the judge did consider that that would be our arguments. And then a petitioner would refer to AR-50. But counsel, exhaustion requires that the petitioner raise it to the BIA. And if you didn't raise it to the BIA, then it's not exhausted. You want to, well, the BIA started the decision by adopting, by citing to Bourbano. And petitioner argues then that this particular adoption or affirmation of the immigration judge's decision makes Bourbano central to exhaustion and review doctrine. Well, issues the immigration judge decides. That's a pretty broad reading, exhaustion. I've never seen a case that does that. If the BIA adopts the IJ's decision, then you're saying anything that's in the IJ's decision is exhausted before us? No, not exactly, Ioana. Well, my point is this, and I think Abebe versus Gonzalez talks about that, that even if not vigorously argued on the appeal, this certain issues may be considered by the BIA and by the federal courts. For instance, the immigration judge gave a lot of attention and a lot of consideration to respondents to the connection of petitioner's religious beliefs and his persecution. Well, the BIA adopted, they cited Bourbano, and then the council that the petitioner had at the time, who also helped them to file the direct appeal, the council actually tried to argue some of the issues that connected to the religious beliefs and the persecution, perhaps not vigorously. And that's my point. For instance, Ioana, if I may refer you to AR-17, one of the arguments that the previous council made on the direct BIA appeal, well, she was talking about how respondents favoring law had issues based on his religious beliefs, and then she states or she argues to be correct. Furthermore, the judge erred in deciding that exceptions to force military conscription can constitute persecution. In other words, the previous council that represented petitioners actually advanced some arguments to that regard, however not vigorous. Can we turn to, I mean, yes, and it's citing the inhuman conduct cases there. So if we get to this issue, why, I mean, so as I understand, the immigration judge's decision is not particularly detailed on this particular line, but the immigration judge does speak quite a bit relative to the inhuman conduct of the alternatives, right? So there's a passage in the decision where the immigration judge says, after talking about mentioning inhuman conduct, it's likely that he could be contacted by authorities, more probably because of his position regarding military service. It says whether he refused or did not seek alternatives, the fact that he would be contacted does not amount to persecution. So if we get to the record and then are looking to whether there's substantial evidence to support, if we read what the immigration judge is doing to say he could find alternatives, there are lots of intermediate steps between petitioner and coerced inhuman conduct on the front in Ukraine, so that it's just speculative. He doesn't get all the way there. And the other cases involve at least more direct links to the forced conscription. So where in the record, given that it's not very well developed in the briefs, where in the record should we be compelled to find a well-founded fear? First, that he will be conscripted. I understand he has the summons. But even if he's conscripted or brought into the military system, that he would be forced to commit inhuman conduct. Ioanna, I will start with AR-51, where the judge, the very same judge at the same time notes, apparently there is an exception in Russia that in certain period, a time of war, that one would not be eligible for alternative services. Previously, the judge was talking about that he cannot grant respondent a petitioner's asylum because of the possibility of the alternative service, but at the same time, which would be contradictory, the immigration judge acknowledges that during the time of war, and that's exactly what's going on, the petitioner argues, in Russia, he simply would not be eligible for the alternative services. Hence, he would be forced to serve in Russian military. Is there an important difference between now going to the exhibits, the country condition report, some of the other materials that the petitioner put in the record, between alternative civil service, that is being diverted from the military altogether, versus being conscripted in the military but finding other ways to serve, which I think there is some evidence of in the record? Which are we talking about here? In other words, even if he's conscripted, it's not inhumane conduct, and the record wouldn't compel us to do so, if there's substantial evidence that he could be diverted into some sort of alternative service within the military that would keep him from the front lines. Understood, Your Honor. Well, again, petitioner argues that during the time of war, and again, the judge acknowledged that there is no alternative service. And in terms of the petitioner being forced to engage in inhumane conduct, the evidence would be in the Department of State Human Rights report on Russia, the one that was made part of the record for 2022, that would be in Exhibit 3. And, Your Honor, I'm referring to the fact that the conscripts… Counsel, can I ask you a question about that alternative? I read the IJ saying she's saying there's an exception because it was a time of war to the age of conscription, which is 27, since he's 40. But the IJ seems to suggest that his brothers did receive the alternative service. And so why is he not eligible for that? Your Honor, the petitioner… My understanding is that there are two commingled issues. The alternatives to the military service prior to the announcement of the war, Russian-Ukrainian war, which would be prior to February 24 of 2022 and after that period of time. So perhaps those two issues were somehow commingled and compounded, impermissibly compounded, because there is certainly, and petitioner, lead respondent never disputed that, that prior to the time of war, prior to February 24 of 2022, he was offered the alternative services. And then perhaps that age limitation, meaning to the certain period of time, actually was referred to the conscription prior to February 24 of 2022. Now, during the time of war, respondents… The petitioner's argument was that he believes he would be subject to the mandatory military conscription, even being 40. At that time, he was 40 years of age, which would exceed the age of 27, Your Honor. Do you want to save your time for rebuttal? Yes, Your Honor. Yes, Your Honors. May it please the Court. Christopher Pryby for the Attorney General. In response to Your Honor's questions, the… First, the claim that is being considered in these questions, specifically whether Fedorov will be looking at… whether he presented a claim that he would be forced to commit inhuman conduct. That is not what he presented to the IJ. Throughout his entire presentation and his briefs, he is looking… asking… he is saying that he will be persecuted for his religious objection. And this is actually… it's not clear. He sometimes cites excessive punishment, but sometimes he just seems to suggest that it's a per se type form of persecution to be conscripted against his beliefs. And that was rejected by the Supreme Court in INSV Elias Zacharias. And in fact, GVR had a case from this court that had held that… that there was a per se persecution for being conscripted, even though you conscientiously objected. What about… I mean, the petitioner talks about when asked, point blank, by the immigration judge, says that it's criminal they're doing. I mean, so these are war crimes. Why isn't that enough to assert a claim sounding in inhuman conduct? It's not… criminal can mean a lot of different things. It could mean criminal as in it's a wrong thing to do. I mean, there's a line between objecting to a course of behavior because you think it's wrong and being worried that you're going to be forced to commit acts that are inhumane. Here he is focusing on, again, the… this is like a political belief that it is wrong for Russia to be attacking our brothers. Well, he doesn't say it's wrong. He says it's criminal, and we typically don't expect petitioners to use magic words in terms of saying I am bringing a claim for inhuman conduct. Well, I mean, if you look at his mere use of the word criminal as enough to bring that claim, that is sort of a magic words rule to the petitioner's benefit. It's saying that you're imputing a claim that he thinks he's going to be forced to commit inhuman acts, which is a very specific type of claim, one that distinguishes from the general… that Barraza Rivera distinguished from the general conscientious objector claim. Sure, but then, I mean, then we're presented with a decision by the immigration judge that was adopted by the board under Bourbono that does use those magic words inhumane conduct. And I guess, first of all, on the exhaustion question, doesn't a B.B. say that even if, you know, once the board decides to get past its own procedural kind of objections and does reach a claim, whether or not it was presented below, that we're obligated to review it? That is what a B.B. says, but that's not applicable here because the claim was not presented below. The idea… Well, and these cases were cited in the briefs to the board. Your friend just noted that. Yeah, I can pull up the language. I think it was on page 1st AR 17. Punishment for violation of military service rules can constitute persecution where the individual would suffer disproportionately severe punishment for evasion on account of one of the grounds. That's the claim that the Petitioner raised. Is that the same thing as inhumane conduct? That's my point. I don't even think the I.J. reached the inhumane conduct exception. He or she seems to be talking about the disproportionate punishment and then says, in other words, inhumane conduct. But I think that's not correct. Those are different exceptions. Is that right? Yes, Your Honor. That's the point I'm making. The point that the claim that the Petitioner is making is the first one. Right. Disproportionate conduct. Right. And you're saying the Petitioner never raised inhumane conduct exception, which is totally separate. Correct. But it seems like the I.J. botched it a little by conflating the two, calling the disproportionate exception inhumane conduct. That's correct. And, in fact… What do we make of the Barraza-Rivera site in that passage then? In which passage, Your Honor? From the brief that you just pointed us to. The Barraza-Rivera only involved inhumane conduct. I get that the other cases also presented the punishment question. And, I mean, looking at the I.J., again, I'm not suggesting that it's crystal clear, but when you turn to the I.J., so the Petitioner sites or the Appellant sites, Barraza-Rivera, to the Board, the Board adopts via Bourbano a decision in which, on page 57 of the immigration judge's decision, when the judge is discussing this, says inhumane conduct, and then cites, it cites, it says, then it also raises the religious point, I think, that you'd made, conscientious objectors. But then it, that's the Zahetia case, the Jehovah's Witness case. That's all the way at the top of the page. What the immigration judge cites after this are the inhuman conduct cases, Barraza-Rivera. Well, Barraza… I'm sorry, Your Honor. Go ahead. Barraza-Rivera states all of the, I believe it states all of the different objections, and then it talks about specifically the one, or the exceptions, but then it talks specifically about the inhuman conduct exception. Here, so a citation just to the case, a bare citation, as is also present in the brief on page 17, those cannot alone be enough to raise an inhuman conduct claim. It is where it's just one of a list of types of exceptions that could be found to the no per se rule for conscientious objector standards. But I guess then why, so going to the record that the Petitioner presented to the agency, where this is at least in the air, we can see whether it was presented or exhausted before hanging those labels on it. It's out there. The cases are being cited. There's some testimony regarding it. And then what are we to make of all the, he's not putting in things about, there are some things about his sincere religious beliefs, but there's a lot in there about Russia's conduct of the war in Ukraine, and the, for lack of a better term, the inhuman conduct that's occurring in that theater. And so why isn't that in its totality enough? I mean, what else would be the point of discussing as the war there was fought in a criminal way, as he suggested? What's the point of all that in the record, if not to connect those dots towards inhuman conduct? I'm going to refer to another Abebe case. This is Abebe v. Mukasey. And in that case, exhaustion requires that an issue be raised and argued in the conjunctive. Here, maybe there are issues floating around in the record, but none of them were squarely raised by the Petitioner before the IJ, or none of the ones that we are speaking about right here. This is the first time that this issue has been this much discussion about this kind of claim in this case. The agency never considered this. It was never brought to the agency's attention. This is not exhausted. I guess, again, we're in a position where the board, in a Bourbonno Affirmance, we go back to the IJ to try to figure out what was presented. I can't recall whether there was, you know, and then we have the declaration and testimony. Was there briefing before the IJ where we should be looking to see whether it was presented or not? I think, generally, the Petitioner established their claim through a declaration and through testimony to the immigration judge. And, again, the immigration judge has an obligation to, if a claim can be made out of there, to identify it, and it seems here that the immigration judge says in human conduct. So, I mean, in front of the – set aside the board and the briefs and everything else, because the board made the decision to Bourbonno Affirm. So we're now back to whatever the IJ thinks was presented was presented. And I am asking, or I am saying, if this Court is looking at Abebe v. Gonzales to say that the IJ's opinion is what counts, this Court should also apply Abebe v. Mukasey to the briefing below before the IJ. That means that the Petitioner needs to argue and raise and argue all issues before the IJ. So in this case, if you look at the briefs, there is actually a briefing by the Petitioner's counsel before the IJ. This is a – I'm looking at AR 155 and 156. Because Mr. Fedorov is a man of faith and attends an evangelical church, he cannot take up arms and alternative service is not available during mobilization. 156. He went through years of outright persecution from civilians and authorities, and there is no indication that he would be able to escape from military service upon arrival to Russia. This is about forced conscription. This is nothing to do with inhumane conduct, which was raised in an errant phrase by the IJ one time and not analyzed at all. This is not before the agency. And if this Court were to decide the issue, that would be violating Chenery, which is giving the agency the first crack at this issue. Well, I guess there's room for gray area, and in the past we have remanded to allow the IJ to consider and better specify, provide us grounds for review. In other words, part of the discussion we're having here today is what exactly are we reviewing? And if the record isn't clear as to what the IJ reviewed, why don't we just send it back and give the agency a chance to spell it out a little more clearly? The burden is on the petitioner to show that he is eligible for asylum and other relief. If the IJ is only ruling on what the petitioner brings forward, and if the petitioner makes a clear claim as to this is the form of persecution I am expecting, I am expecting either to be conscripted against my conscientious objection or to be severely punished, then that is what the IJ has to go on. And if this Court were to remand merely because an IJ made an error in stating something during an oral opinion, then that would also open the floodgates for a lot of other remands based on just errant phrasing when the reasonable course of the agency's decision is apparent. Here it's apparent that it was not brought up that calling a war criminal one time during testimony and an IJ saying, oh, well, it would be inhumane to subject him to severe punishment because of his religious beliefs, that cannot be enough to raise this claim on behalf of the petitioner in some way. Mr. Pryby, I appreciate you becoming prepared to discuss these issues today, but did the government raise exhaustion in its briefing? We had no need to, Your Honor, because this issue was not presented before the agency. The opening brief said that it was. The government had an opportunity to respond in its brief. Is there anything in the brief that gets at these issues? Cannot the government forfeit an exhaustion argument, right? It's non-jurisdictional. If there's something in the brief, let me know. Otherwise, it's just coming down to our discussion here. Today is the first time that the government is discussing this. Is that right? In the brief, the government raises a failure to exhaust on the grounds of nexus because the claim that the petitioner raised was, I am being persecuted because of my religious beliefs. Now, where does it talk about the inhumane? I mean, I think we've both established that inhuman conduct is a claim, a type of claim for these purposes for exhaustion. Anywhere in the briefs where there's a discussion of non-exhaustion of the inhuman conduct? The claim that he does not raise this claim in his blue brief, that is, therefore, the government did not need to raise an exhaustion argument. I recall there's at least a couple pages, certainly a full paragraph, citing the inhuman conduct pieces as part of the reasonable fear. My time has expired. May I answer the question?  Oh, sorry. The section starts with the lead petitioner is a religious pacifist. And this is in your brief or the? The blue brief.  And the petitioner summarizes the IJ's opinion. The situation is rather transparent. The religious pacifist demonstrates in public in protest to war, and he gets labeled a sectarian and being threatened to send to war. All of this sounds in, so far it sounds in, the claim that he is being persecuted because of his religion. Threats, let's see. And then he cites a bunch of cases that have to do with deserting to avoid participating in acts condemned by the international community. Right. This court has said you must present a cogent and reasoned argument in order to preserve the issue in the briefs. Here, the petitioner has put a bunch of citations in the middle of what is essentially a claim based on religious persecution. And that does not give fair notice to the government that this is a specific type of claim that this petitioner is raising. Therefore, exhaustion does not need to be raised by the government in this instance. Thank you, counsel. Your Honor, I don't have any additional arguments, so I won't be taking my two minutes for rebuttal. If I could ask a question, then. What's your response to the, that the IJ actually never even considered an inhumane conduct exception because he or she just mislabeled what was the disproportionate punishment exception? Well, certainly that's more than just an error in phrasing. So petitioners do disagree with counsel characterization of that. I would rather, petitioners would rather agree with your reasoning, Your Honor, when you said that perhaps the IJ conflated the two, the issue of disproportionate punishment for violation of military service rules and kind of calling it or conflating or calling it an inhuman conduct. Well, however, it's not the petitioner's fault that the judge did not give it the full consideration, even though the judge cited the proper case law that talks about inhumane conduct. Well, in other words, the remand could be appropriate in this particular case for the judge to develop the issue of inhuman conduct to expressly address it. I would agree with that when I heard your reasoning, Your Honor. Okay. Anything else? Any questions? Okay. Thank you very much, counsel. This case is submitted. Thank you.
judges: BUMATAY, JOHNSTONE, ALBA